[Cite as *Knop v. Knop*, 2016-Ohio-7146.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| LAURA L. KNOP, | : | **O P I N I O N** |
| Plaintiff-Appellee/ Cross-Appellant, | : | |
| | : | **CASE NO. 2015-L-107** |
| - vs - | : | |
| JEFFREY G. KNOP, | : | |
| Defendant-Appellant/ Cross-Appellee. | : | |
| | : | |

Appeal from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 13 DR 000276.

Judgment: Affirmed.

*Sandra A. Dray,* Sandra A. Dray Co., L.P.A., 1111 Mentor Avenue, Painesville, OH 44077 (For Plaintiff-Appellee/Cross-Appellant).

*Laura M. Wellen,* Thrasher, Dinsmore & Dolan, 100 7th Avenue, Suite 150, Chardon, OH 44024 (For Defendant-Appellant/Cross-Appellee).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant/cross-appellee, Jeffrey G. Knop ("Husband"), appeals from the final divorce decree of the Lake County Court of Common Pleas, Domestic Relations Division. Appellee/cross-appellant, Laura L. Knop ("Wife"), has filed a cross appeal. Both parties challenge the court's award of spousal support. Husband also challenges the court's determination that $30,000, an amount received from an inheritance, but

used to pay down a mortgage on the marital residence, was non-traceable, marital property. And Wife challenges the trial court's allocation of marital debt. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} Husband and Wife were married on January 23, 1988. They are the parents of three children, all emancipated and living outside the marital residence. On May 13, 2013, Wife filed a complaint for divorce, a motion for restraining order, and a motion for temporary spousal support. And, on May 17, 2013, a restraining order was entered which, inter alia, restrained the parties from disposing of any money or credit interests during the pendency of the proceedings. On July 29, 2013, a hearing was held on the motion for temporary spousal support. Ultimately, Husband was ordered to pay $1,700 per month in spousal support to Wife, together with the mortgage on the marital residence, $1,179.65 per month, for a total of $2,879.65 per month. The order took effect August 1, 2013. Throughout the proceedings, Wife paid on the couple's home equity line of credit in the amount of $355 per month, along with real property taxes, totaling $3,188.

{¶3} The parties stipulated that Wife would retain the marital residence, which had a stipulated value of $174,000. The parties also stipulated that the residence had a $26,968.11 mortgage and a home equity line of credit with a balance of $49,663.57.

{¶4} Both parties are employed by The Cleveland Clinic Foundation; Husband is the direct nursing manager at the nursing staffing office at The Cleveland Clinic main campus. Wife is a Perinatal/Neonatal Educator at Hillcrest Hospital and Husband as a Nurse Manager at The Cleveland Campus. Husband's 2013 income was $128,609.73; wife's 2013 income was $56,627.64. The trial court noted that Husband's income

included a tuition scholarship of $3,000 and a $3,000 cash-in for paid time off, which was not reoccurring. It therefore determined Husband's income, for purposes of spousal support, was $123,000. The trial court also extrapolated Wife's income, based upon her then-current earnings of 2014, would be $54,426.99 for purposes of spousal support.

{¶5} The parties' earning abilities were well established by the testimony. According to Wife, however, her 2013 earnings reflect several additional hours per pay period relating to on-call work and overtime opportunities which are no longer available due to financial and position cuts. She testified employees could receive additional earnings by "floating" to other positions. Wife, however, testified that, without additional education and training, she could not work as a practicing nurse because her skills were not current and she had not been trained on much of the newer equipment. Alternatively, Husband's income has increased each year since 2009.

{¶6} The trial court found the term of marriage was from January 23, 1988 through the first day of trial, April 23, 2014. The court found both parties have post-high school education; Wife has an associate's degree in nursing and a bachelor's degree in nursing. And Husband has a bachelor's degree in nursing and a bachelor's degree in healthcare administration. Despite Husband's arguments to the contrary, the trial court determined that Wife was not voluntarily under-employed. The court noted she is working up to her potential and capability in her current position. The court consequently did not impute income to either party

{¶7} In 2008, Husband received an inheritance from his mother's estate in excess of $100,000 which was deposited into a Chase Bank account solely in his name.

3

He later placed Wife's name on the account as well. In March 2009, $70,000 was withdrawn from the joint account and moved to Huntington Bank. $50,000 was placed in a certificate of deposit and $20,000 was left in a joint money market. When the CD matured, it was cashed in and deposited into the joint money market account. Later, Husband applied $30,000 to the primary mortgage on the marital residence. Subsequently, the parties secured a home equity line of credit at Huntington Bank. The home equity line was encumbered with $39,000 of debt that was imputed to both parties.

**{¶8}** Husband claimed the $30,000 used to pay down the original mortgage was separate property to which he was entitled to a credit. Wife maintained, by placing her name on the joint account, Husband had the donative intent to make the money marital property. The magistrate agreed with Husband, concluding Husband adequately established the traceability of the money and therefore the magistrate found it was separate property.

**{¶9}** After considering Wife's objection to this issue, the trial court found the magistrate's conclusion to be error. The trial judge determined there was insufficient evidence of donative intent to create a gift; nevertheless, the court determined that once the couple took out the home equity line of credit, the $30,000 lost its traceability; that is, it was no longer clear whether the equity cashed out against the line of credit was Husband's separate equity or marital equity. The court therefore ruled the $30,000 was marital property.

**{¶10}** Also germane to this appeal is the issue of spousal support. The magistrate awarded Wife ongoing spousal support in the amount of $2,200 per month

4

for a period of 91 months. Wife objected to this conclusion, but the trial court overruled the objection and adopted the magistrate's decision. The trial court entered a final judgment on divorce and this appeal and cross-appeal followed.

{¶11} For his first assignment of error, Husband asserts:

{¶12} "The trial court erred and abused its discretion in determining the separate property interest of appellant and failing to award him said interest in the division of property."

{¶13} "Marital property" is defined at R.C. 3105.171(A)(3)(a)(i) as "[a]ll real and personal property that currently is owned by either or both of the spouses *** and that was acquired by either or both of the spouses during the marriage." "'Marital property' does not include any separate property." R.C. 3105.171(A)(3)(b). R.C. 3105.171 (A)(6)(a)(i) defines "separate property" to include "[a]n inheritance by one spouse by bequest, devise, or descent during the course of the marriage." According to R.C. 3105.171(B), the trial court is required to identify marital property and separate property and to divide both equitably between the spouses.

{¶14} "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "Traceability of an asset from its origin as a discrete, separate property to its current status is the primary means of determining whether the property is separate." *Needles v. Needles*, 11th Dist. Geauga No. 2001-G-2386, 2002-Ohio-7128, ¶10. "Thus, when one spouse contributes equity in the parties' marital home and that spouse can trace the equity to his or her [separate] funds, those funds remain the spouse's separate property."

5

(Citations omitted.) *Jones v. Jones,* 4th Dist. Athens No. 07CA25, 2008-Ohio-2476, ¶21 "Holding property in co-ownership with a spouse is not determinative of whether property is separate or marital. Nonetheless, a spouse may convert separate property into marital property by making an inter vivos gift." (Citations omitted.) *Id.* at ¶22. "[A]n inter vivos gift is an immediate, voluntary, gratuitous and irrevocable transfer of property by a competent donor to another." *Smith v. Shafer*, 89 Ohio App.3d 181, 183 (3d Dist.1993).

**{¶15}** Husband asserts the trial court erred in concluding the $30,000, which originated from his inheritance, was marital property. He contends the money was traceable, separate property and the home equity line of credit, which the couple took out after the money was used to pay down the mortgage, had no effect on its traceability. In support, Husband cites this court's opinion in *Smith v. Emery-Smith*, 190 Ohio App.3d 335, 2010-Ohio-5302 (11th Dist.).

**{¶16}** In *Smith*, the wife's separate, real property was used as collateral for two mortgages. At closing, the wife was required by the bank to sign a series of documents in order to receive the loan proceeds. They included a joint and survivorship quitclaim deed on the property in favor of her and the husband. She claimed she signed the deed because the bank required it as part of the loan process, not because she intended to give the husband an interest in the property. The trial court ultimately found the property to be a marital asset, concluding that the wife's decision to execute the deed titling the property in both her and the husband's names was sufficient to establish donative intent.

6

**{¶17}** This court reversed the trial court's determination. In support of this holding, this court noted that "'the refinancing of a home after a marriage does not in any way convert separate property into marital property where the mortgage was not taken in order "to finance the purchase of the residence."'" *Id.* at ¶37, quoting *Ockunzzi v. Ockunzzi,* 8th Dist. Cuyahoga No. 86785, 2006-Ohio-5741, ¶20, quoting *Kohus v. Kohus,* 12th Dist. Clermont No. CA2002-07-055, 2003-Ohio-2551, ¶21. This court accordingly determined that while the property was used as security for a loan, the mortgage was not given in order to finance the purchase of the property. Thus, the wife's use of the property as security for a mortgage did not provide evidence of her donative intent.

**{¶18}** The scenario in this matter differs from *Smith* both legally and factually. The legal issue in *Smith* was not traceability, but the wife's donative intent. Because the *Smith* court did not address the issue of traceability, it does not control the matter before this court. Moreover, even if the issue in *Smith* was traceability, the wife's separate real property in that case was simply used as collateral to secure certain loans. Even though the loans were used to purchase items or services that became marital assets, it is unclear how the home's status as collateral would convert the wife's separate interest in the home to marital property. The facts in *Smith*, accordingly, are also disanalogous to those in this matter.

**{¶19}** Husband alternatively asserts that, if he is not entitled to the entire $30,000 as separate property, he is at least entitled to a pro rata amount equal to the percentage his original $30,000 increased the home's equity. He maintains that because such a sum is mathematically traceable, the trial court had a duty to calculate

7

the percentage and award him that amount as separate property. In support, appellant cites this court's decision in *Frederick v. Frederick*, 11th Dist. Portage No. 98-P-0071, 2000 Ohio App. LEXIS 1458 (Mar. 31, 2000).

{¶20} In *Frederick*, the husband contributed an initial sum of $55,924 in separate property to the parties' original residence and retained this separate interest throughout the marriage. The parties purchased another residence prior to selling the initial residence. After selling the first residence, the parties used an unstated amount of the sales proceeds to pay off a $46,826.07 home equity line of credit that was opened to finance the purchase of the second home. Because the sales proceeds of the original home were traceable, this court determined that the trial court was obligated to calculate the percentage of the husband's separate property that was used to pay off $46,826.07 and award him that amount.

{¶21} This court further noted that $53,116 of the net proceeds from the sale of the original home was deposited into a joint checking account; an undisclosed portion of that amount was later used to finish the construction of the second residence. This court determined the trial court was additionally obligated to calculate what percentage of the $53,116 could be traced directly back to the sale of the first home as the husband's separate property.

{¶22} This case is distinguishable from *Frederick*. In *Frederick*, it was uncontroverted the husband retained a specific percentage of separate property in the original home. Upon sale of that home, he was entitled to that percentage amount because it was specifically traceable. Accordingly, the husband had a right to that percentage amount used to pay down other marital debt relating to the purchase or

8

financing of the second home *because* it was traceable to the sales proceeds of the first home. His interest was not simply conditioned on the percentage he originally contributed; rather it was premised on the percentage he contributed, in light of the known amounts from the proceeds used to pay down that debt and the traceable percentage of separate property he retained from the original sale.

{¶23} In this case, Husband used $30,000 of separate property to pay down the mortgage on the marital residence. The parties subsequently took out a home equity line of credit on that residence, borrowing $39,000 on a home equity line of credit. Once they borrowed against the existing equity in the home, there is no feasible or workable way to determine if the equity used belonged to Husband or was pre-existing marital equity. Indeed, the approach husband wishes this court to adopt flies in the face of the statutory mandate that separate property be traceable. To wit: if, in the first place, the asset cannot be reasonably traced, then we would be dividing assets, pro rata, which, for all we know, are not separate property. Under these facts, Husband's "pro-rata-percentage" argument and the concept of traceability are mutually-exclusive ideas.

{¶24} In light of the foregoing distinction between the instant case and *Frederick*, we agree with the trial court that this matter is directly analogous to *Long v. Long*, 176 Ohio App.3d 621, 2008-Ohio-3006 (2d Dist.). In *Long*, the husband paid off the couple's mortgage with $48,500 received in a personal-injury settlement, money deemed a separate asset. The couple subsequently took out a home equity line of credit for $50,000 which was almost entirely unpaid at the time of their divorce. The court held the original money lost its traceability once the couple used the home equity

9

loan; the court reasoned it was impossible to determine whether husband's equity or marital equity was used when they borrowed against the home's existing equity.

{¶25} Here, it is clear that the placement of the funds at issue in a joint account, unto itself, was insufficient to establish donative intent. *Jones*, *supra.* Moreover, the money did not lose its traceability when it was used to pay down the couple's initial mortgage. Instead, as in *Long*, the $30,000 lost its traceability when the parties took out and borrowed against the home equity line of credit. The record indicates that the parties borrowed $39,000 against the home's equity on the line of credit. Under the circumstances, it is impossible to determine whose equity, whether Husband's $30,000 or marital equity, was withdrawn from the home. Once the new debt was incurred, the $30,000 Husband paid on the original mortgage became hopelessly commingled with the remaining marital equity. All we know is that $39,000 of existing equity was "cashed out" when the parties drew on the line of credit. Once the parties borrowed $39,000 against the equity on the home, however, it would be both arbitrary and intellectually dishonest to conclude Husband is entitled to the first $30,000.00 in equity as his separate property.

{¶26} Husband bore the burden of proving, by a preponderance of the evidence, that the first $30,000 in home equity was traceable to his inheritance. *Long*, *supra*, at ¶43. Given the circumstances of this case, we hold he failed to do so. The trial court, therefore, did not err in concluding that money was marital property.

{¶27} Husband's first assignment of error lacks merit.

{¶28} Husband's second assignment of error provides:

10

**{¶29}** "The trial court erred and abused its discretion in determining the amount and duration of spousal support."

**{¶30}** The trial court has significant discretion in awarding spousal support in a domestic relations proceeding, provided the award is "'appropriate and reasonable.'" *Bandish v. Bandish*, 11th Dist. Geauga No. 2002-G-2489, 2004-Ohio-3544, ¶14. In determining what is appropriate and reasonable under the circumstances, the trial court is to consider the factors specified in R.C. 3105.18(C)(1)(a)-(n). *Id.* at ¶14-15. The trial court's decision will not be reversed on appeal absent an abuse of discretion. *Id.* at ¶13. The phrase "abuse of discretion" is one of art, "connoting judgment exercised by a court, which neither comports with reason, nor the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30. When an appellate court is reviewing a pure issue of law, "'the mere fact that the reviewing court would decide the issue differently is enough to find error * * *. [In] contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Sertz v. Sertz*, 11th Dist. Lake No. 2011-L-063, 2012-Ohio-2120, ¶31, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶67.

**{¶31}** Wife points out that Husband failed to specifically object to the magistrate's decision. Husband, however, asserts he preserved the issue of spousal support for purposes of appeal because he filed a written closing argument challenging spousal support and he filed a "Brief in Response to Plaintiff's Objections to Magistrate's Decision." Although Husband did file the foregoing pleadings, he did not file independent objections. His written closing argument was filed before the

11

magistrate issued her decision. Moreover, Husband moved the court for an extension of time to file objections; the court granted the request and gave him until August 20, 2014. He did not file objections by that date and did not seek an additional extension. Further, Husband's brief in response to Wife's objections, filed October 30, 2014, does contest Wife's arguments, but does not set forth any independent objection specifically arguing the spousal support should be reduced. And, nevertheless, it was filed well beyond the timeframe allowed by the court's extension.

**{¶32}** Civ.R. 53(D)(3) provides:

**{¶33}** (b) Objections to magistrate's decision.

**{¶34}** (i) Time for filing. A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. If a party makes a timely request for findings of fact and conclusions of law, the time for filing objections begins to run when the magistrate files a decision that includes findings of fact and conclusions of law.

**{¶35}** (ii) Specificity of objection. An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection.

**{¶36}** * * *

**{¶37}** (iv) Waiver of right to assign adoption by court as error on appeal. Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically

designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

**{¶38}** Appellant's failure to file specific objections has waived all but plain error. "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116 (1997), syllabus.

**{¶39}** In his appellate brief, Husband argues the trial court erred in ordering spousal support of $2,200.00 per month for 91 months. He claims both the amount and duration are unreasonable. In support, he asserts Wife is underemployed and she could obtain additional hours without further schooling or training. Despite Husband's claims to the contrary, Wife testified that she would not be able to obtain additional hours as an educator, the position she currently holds. She testified she had no ability to add hours or be an "on-call" employee because these opportunities had been eliminated. And, although Wife suggested she could obtain full-time employment as a nurse, such a transition would require her to obtain additional education and training because her skills are no longer "on par" with the equipment and other aspects of nursing practice. The trial court did not abuse its discretion in ordering the underlying spousal support award. Husband has accordingly failed to establish plain error.

**{¶40}** Husband's second assignment of error lacks merit.

13

{¶41} For her first assignment of error on cross appeal, Wife asserts: "The trial court erred and abused its discretion in determining the amount and duration of spousal support."

{¶42} In this case, the magistrate considered each of the relevant R.C. 3105.18(C) factors. Wife, however, takes issue with the amount and duration of the award. Instead of $2,200 per month for 91 months, she argued Husband should pay $3,200 per month for 105 months.

{¶43} In support, Wife first asserts the magistrate erred in imputing a $123,000 annual salary to Husband; she maintains the testimony indicated a $3,000 tuition credit on Husband's W-2 was not considered part of Husband's income; instead, it appeared on the W-2 for tax purposes. Thus, Wife appears to argue the magistrate should have based its spousal support award on a $126,000 annual salary.

{¶44} Even assuming the tuition credit was not part of Husband's income and, as a result, the magistrate erred in subtracting the $3,000, it is not clear this addition would have any appreciable impact on the trial court's spousal support order. Any arguable error in this respect is de minimus and therefore harmless.

{¶45} Wife additionally contends the magistrate erred in calculating Husband's surplus income at $2,205.50; Wife asserts the trial court based its findings upon a list of Husband's monthly expenses when he lived at the marital home; because, however, at the time of hearing, Husband resided with his paramour, and he testified he pays her approximately $500 per month. Wife maintains the trial court significantly undervalued Husband's surplus.

14

**{¶46}** While Wife is correct that some of Husband's monthly expenses reflect expenses he incurred prior to leaving the marital residence, he testified he still has many of the same expenses as of the date of the hearing. And, even though Husband testified he was living with his girlfriend, he also testified he was interested in obtaining a residence of his own. From this, the trial court could infer Husband's expenses, while an estimate, were reasonably accurate. And, as a result, could also reasonably infer Husband's monthly surplus from the expense sheet.

**{¶47}** It is worth pointing out that, throughout the divorce proceedings, Wife continued to assist the parties' adult son, who, at that time, was in college. The trial court found this point germane to the spousal support inquiry and found:

**{¶48}** "While the divorce was pending, Mother testified she paid half of Dillon's tuition, and all his expenses, which included his car payment, car insurance, cash, parking, haircuts, flights, books, and supplies. Wife testified she gives Dillon $2,500 per semester. Husband has paid the other half of Dillon's tuition. He also keeps the parties' two adult sons on his cell phone plan.

**{¶49}** "Consideration of an award of spousal support requires a close examination of income and liabilities. A party can have disposable income which is unreasonable due to excessive liabilities incurred or excess disposable income due to temporary conditions. Therefore, this writer does not agree with Wife that disposable income itself is integral to an award of spousal support. Herein, Wife's continued financial assistance to Dillon substantially increased her separate debt while the divorce was pending. A spousal support award is for the reasonable and appropriate support for a spouse, no one else."

15

**{¶50}** The foregoing points demonstrate that the court was aware that Wife voluntarily paid the expenses of the parties' adult son. She did so to an apparently greater degree than Husband. Wife's decision to do so was generous, but the trial court determined Husband should not be required to reimburse wife for her voluntary largess. Under the circumstances, the trial court's observations are reasonable and further support the magistrate's ultimate decision, which was adopted by the trial court.

**{¶51}** Given the information submitted by the parties regarding spousal support, we conclude the trial court did not abuse its discretion in concluding it is appropriate and reasonable for Wife to receive $2,200.00 per month for 91 months.

**{¶52}** Wife next asserts the trial court erred in giving Husband credit (against the 91 month duration) for paying temporary spousal support during the pendency of the proceedings. She contends such an order is unjust and inappropriate because she was only receiving $1,700.00 during this timeframe. We do not agree.

**{¶53}** While Wife is correct she was receiving $1,700.00 per month in direct spousal support payments, Husband was paying the primary mortgage on the marital residence during the life of the temporary order. The primary mortgage was $1,179.65 and Wife continued to reside in the home. Accordingly, although the mortgage was more of an indirect form of support, Husband was nevertheless paying an overall amount of $2,879.65 per month during the pendency of the proceedings. The trial court did not abuse its discretion when it credited Husband for the temporary spousal support paid throughout the proceedings.

**{¶54}** Wife's first assignment of error on cross-appeal is without merit.

**{¶55}** Wife's second assignment of error on cross-appeal provides:

**{¶56}** "The trial court erred and abused its discretion when it failed to equitably allocate the marital debt."

**{¶57}** Wife first asserts the trial court erred in failing to properly allocate marital debt in the form of property taxes she paid during the course of the divorce proceedings. She further contends the trial court should have found Wife's credit card debt, both individual and joint with the couple's son Dillon, was marital debt as it was incurred during the marriage.

**{¶58}** In her objections, Wife asserted that she used the home equity line of credit to pay for various expenses, including the property taxes. She asserted, however, it was inequitable for her to be held entirely responsible for the expenses incurred on the line of credit because she had no other means of paying for these expenses.

**{¶59}** The trial court determined "Wife's divorce complaint, along with the mutual restraining order, had been served upon Husband prior to the June 27, 2013 use of the equity line. Therefore, Wife accessed the equity line at her peril." The trial court therefore determined that, because there was an order forbidding either party from disposing of any money or credit interests after May 17, 2013, it was fair and equitable to allocate that debt to Wife. Under the circumstances, we conclude this finding is reasonable and a sound exercise of the trial court's discretion.

**{¶60}** The trial court did not directly address Wife's objection that because the property is titled to both parties, both parties should share the burden of paying the associated property taxes. The trial court's silence implies the objection was overruled. Although the trial court could have reasonably agreed with Wife, it could also

17

reasonably conclude Husband's payment of the mortgage (which increased the equity in the home) in conjunction with the temporary support order struck a fair and adequate balance on this issue. We will not disturb the trial court's judgment.

{¶61} With respect to Wife's individual and joint credit card debt (held with the couple's son), counsel for both parties indicated on record that each party had agreed to keep their own credit card debt. To the extent this was an issue to which the parties apparently stipulated, there was no need for the trial court to consider the division of Wife's personal and joint credit card debt.

{¶62} Wife's second assignment of error on cross-appeal is without merit.

{¶63} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed.


THOMAS R. WRIGHT, J., concurs in judgment only,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.