[Cite as *Alexander v. Alexander*, 2014-Ohio-131.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

CINDA L. ALEXANDER

      Plaintiff-Appellant

v.

CURTIS E. ALEXANDER

      Defendant-Appellee

Appellate Case No.    25687

Trial Court Case No.   2010-DR-697

(Civil Appeal from Common
 Pleas Court - Domestic Relations)

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of January, 2014.

. . . . . . . . . . .

REBEKAH S. NEUHERZ, Atty. Reg. No. 0076381, 121 South Main Street, Urbana, Ohio 43078
     Attorney for Plaintiff-Appellant

JEFFREY D. SLYMAN, Atty. Reg. No. 0010098, 575 South Dixie Drive, Vandalia, Ohio 45377
     Attorney for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-Appellant, Cinda Alexander, appeals from a judgment and decree of divorce dividing marital property and awarding spousal support payments to Cinda from Defendant-Appellee, Curtis Alexander.[1] Cinda contends that the trial court failed to address and equitably divide Curtis's pension. In addition, Cinda contends that the trial court abused its discretion in the duration and amount of spousal support. Finally, Cinda contends that the trial court abused its discretion in failing to impute income to Curtis, based on Curtis's voluntary unemployment.

{¶ 2} We conclude that the trial court abused its discretion by failing to consider and account for Curtis's pension for purposes of property division and spousal support. The court did not abuse its discretion in failing to impute income to Curtis, because Cinda did not submit evidence in support of such a finding. Accordingly, the judgment of the trial court will be reversed, and this matter will be remanded for further hearing.

I. Facts and Course of Proceedings

{¶ 3} In June 2010, Cinda filed a complaint for divorce, and Curtis counterclaimed, also seeking a divorce. The trial court filed a temporary support order, but vacated it in part in August 2010. The parties then filed an agreed order, which required Curtis to pay $550 in temporary child support and $600 per month in spousal support. At the time, Curtis was employed as a correctional officer with the State of Ohio, and Cinda was receiving disability payments.

---

[1] For purposes of convenience, we will refer to the parties by their first names.

**{¶ 4}** In November 2011, the minor child was ordered emancipated, and child support was terminated, effective May 22, 2011. After a number of continuances, the final divorce hearing was held in October 2012. At the hearing, the parties stipulated to various matters, but left the issue of spousal support to the trial court's determination. After hearing the evidence, the trial court awarded $450 per month in spousal support to Cinda, for a period of 72 months. The court noted that it was shortening the normal term of spousal support by 18 months, based on the fact that Curtis paid temporary spousal support for two years and had paid the majority of the parties' debt through their Chapter 13 bankruptcy. The trial court reserved continuing jurisdiction over spousal support. Cinda appeals from the judgment of the trial court.

## II. Did the Trial Court Abuse its Discretion

### By Failing to Address Curtis's Pension and in Awarding Spousal Support?

**{¶ 5}** Because Cinda's two assignments of error are interrelated, we will address them together. Cinda's First Assignment of Error is as follows:

The Trial Court's Failure to Address and Equitably Divide the Defendant's Pension Constituted an Abuse of Discretion.

**{¶ 6}** Cinda's Second Assignment of Error states that:

The Duration and Amount of Spousal Support Awarded to Plaintiff/Appellant Cinda Alexander by the Trial Court Constitutes an Abuse of Discretion.

**{¶ 7}** Under the first assignment of error, Cinda contends that the trial court erred in failing to consider Curtis's retirement account, which had a present value at the time of the

hearing in excess of $221,000. Cinda contends that the pension was a marital asset and should have been equitably divided. Under the second assignment of error, Cinda argues that the amount of spousal support was unreasonably low, and that the court's failure to award lifetime support or support for an indefinite time was an abuse of discretion.

{¶ 8} The parties in this case had been married nearly 25 years by the time the divorce was filed in 2010. When Curtis retired on September 1, 2012, he had been employed for 30 years by the State of Ohio, (Exhibit I), and had, therefore, accumulated most of his pension during the parties' marriage. Curtis retired shortly before the final hearing in this matter occurred, and the final entry and decree was filed on December 12, 2012. Consequently, the parties were married when Curtis retired.

{¶ 9} At trial, Curtis testified that he had elected to receive a benefit under "plan A," which would pay him an unknown amount per month during his lifetime and would provide Cinda with 50% of that amount upon his death. Curtis had not yet received a benefit check on the day he testified, and he could not recall the amount of his monthly benefit. Transcript of Proceedings, pp. 44-46. Curtis did not provide documentation to support his testimony. However, Curtis was married on the date of retirement. He was required to receive benefits under "plan A" unless Cinda executed a waiver permitting him to elect an alternate plan. R.C. 145.46(A)(C)(1) and Ohio Adm.Code 145:2-44(A).

{¶ 10} Curtis attempted to elect a more personally generous single life annuity plan, which is described in Exhibit X, a retirement application that he had submitted to the Ohio Public Employees Retirement System on April 15, 2012. This document indicates that Curtis would retire on August 31, 2012 and had selected a single life annuity under either "plan B" or "E" that

would be paid for his lifetime and would terminate at his death with no benefit to Cinda. According to Exhibit X, this would provide Curtis with a gross monthly benefit of approximately $4,223.72. There was no substantive evidence as to what Curtis's monthly benefit was under the relevant "plan A."

{¶ 11}    Both Cinda and Curtis had worked for the State of Ohio as correctional officers. Cinda began earning retirement credit with the state in 1994. Transcript of Proceedings, p. 52. At the date of the hearing, Cinda was entitled to 18 years of retirement service credit. Beginning in 2008, Cinda was paid retirement disability payments from the State of Ohio, based on injuries she sustained in an auto accident while traveling to work. Her monthly payments were about $1,750, and this was her only source of income, other than the temporary spousal support she had been receiving. Cinda will be eligible to file an application to have her disability transferred to retirement benefits on November 30, 2025, (Exhibit H), when she is old enough to retire, but no evidence was submitted to indicate whether the retirement pension would be the same amount, or what the amount, if any, in Cinda's retirement account was at the time of the hearing.

{¶ 12}    Evidence was presented that Cinda would also be eligible for social security benefits of approximately $561 per month if she waited until her full retirement age of 67. This amount would be subject to some decrease due to provisions requiring an offset for public pension income, but no evidence was submitted to indicate what the amount of the offset would be.

{¶ 13}    At the time of the hearing, both Cinda and Curtis were 51 years old. Cinda had a high school education and no special training. Curtis had an associate's degree in real estate. Neither party had any apparent intention of returning to work. Cinda claimed she was unable to be gainfully employed due to her disability, and Curtis stated that he did not intend to pursue

further employment.

{¶ 14} As was noted, the trial court awarded Cinda $450 per month in spousal support for 72 months, but did not make any provisions with respect to the parties' retirement accounts, other than a deferred compensation account that contained approximately $2,938 in August 2011. Curtis retained this account, by agreement of the parties.[2]

{¶ 15} Cinda contends that the trial court should have treated the pension as a marital asset and should have equitably divided it. Curtis contends, on the other hand, that he and Cinda had both retired, and that Cinda never asserted at trial that his pension should be divided. We do not agree that Cinda "retired." Rather, she was receiving retirement disability benefits. (Exhibit H).

{¶ 16} Cinda testified that her disability status was evaluated every year, and paperwork had to be filed in order for her to stay on disability. This is unlike a retirement pension, in that payment is not guaranteed, but is conditioned upon the recipient's continued satisfaction of criteria for receiving disability. Furthermore, disability payments represent an income that an individual receives "in recognition of the fact" that he or she cannot earn income as a result of a disability. *Smith v, Smith*, 2d Dist. Montgomery No. 12063, 1990 WL 166983, *3 (Nov. 2, 1990). *Accord Elsass v. Elsass*, 2d Dist. Greene Nos. 93-CA-0005, 93-CA-0016, 1993 WL 541610, *5 (Dec. 29, 1993) (holding that "disability benefits * * * are a form of wage continuation designed to compensate the recipient for wages that he would otherwise receive but for the disability. Thus, such benefits are not to be considered a part of the marital estate except"

---

[2] The deferred compensation document was dated more than a year before the hearing, and was the latest account value provided to the Court. In general, the documentation submitted by both sides was insufficient to allow a reasoned evaluation of their circumstances.

when the retiree accepts the benefits in lieu of retirement pay.)

{¶ 17}   No testimony or evidence was submitted to indicate that Cinda had accepted disability payments in lieu of retirement pay.   In fact, Cinda indicated otherwise, by stating that she could file an application to transfer to a retirement pension when she attained retirement age. As was noted, the parties failed to present evidence regarding what that amount might be.

{¶ 18}   "Retirement benefits acquired during a marriage are marital assets that must be equitably divided between the spouses in a final judgment of divorce."   *Dindal v. Dindal*, 3d Dist. Hancock No. 5-09-06, 2009-Ohio-3528, ¶ 6, citing R.C. 3105.171(A)(3)(a)(i), (ii), and *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 178, 559 N.E.2d 1292 (1990).   "A vested pension plan accumulated during marriage is a marital asset and must be considered in conjunction with other factors listed under R.C. 3105.18 and other relevant factors in dividing marital assets and liabilities to ensure that the result reached is equitable."   *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 541 N.E.2d 597 (1989), syllabus.

{¶ 19}   In *Hoyt*, the court noted that:

In the instance of vested matured retirement benefits, the amount is currently due and payable and the value is fixed and easily ascertainable.   For example, where an employed spouse is receiving a pension at the time of the divorce, the trial court may consider the pension as earnings in determining the amount of alimony or support.   Whether the parties are of retirement age or close to retirement age, it may be in the parties' best interests for the trial court to consider the pension or retirement benefits as income.   Likewise, in another given situation it may be more advantageous to determine the present cash value or

theoretical liquidation value. The disadvantages of determining a present cash value are in projecting, deducing and calculating what a future benefit is worth in terms of today's dollar. This alternative may be viable only when the parties have other substantial marital assets to offset the nonemployed spouse's share. The advantage of determining a present cash value is that it disentangles the affairs of the parties and concludes their economic partnership. Once the trial court has determined a value, a sum certain, the fund may be liquidated or the employed spouse could be required to make periodic payments to the non-employed spouse in an amount equivalent to that person's share. Another alternative would be to offset the nonemployed spouse's proportionate share with some other marital asset. (Footnote omitted.) *Hoyt* at 182.

{¶ 20} Moreover, "[w]hen the only marital asset of the parties is an employed spouse's pension or retirement benefits, it is difficult for the trial court to structure an equitable property division without dividing the pension or retirement asset. However, where circumstances permit, the trial court should attempt to ascertain the optimum value the pension or retirement benefit has to the parties as a couple, based upon the nature and terms of the plan. The trial court should structure a division which will best preserve the fund and procure the most benefit to each party." *Hoyt*, 53 Ohio St.3d at 183, 559 N.E.2d 1292.

{¶ 21} In the case before us, the retirement accounts were essentially the only assets, as the parties had been involved in a Chapter 13 bankruptcy proceeding between 2006 and 2011, when the bankruptcy proceeding concluded. There appears to be no dispute about the fact that the marital home would be lost, and that there were no other significant assets. The parties also

did not enter into a separation agreement or any written agreement about the distribution of retirement funds before the divorce hearing; they simply told the court at the hearing that they had entered into certain stipulations. Most of the stipulations were to documentary evidence, the distribution of incidental personal property, and the fact that Curtis would be permitted to retain the money in his deferred compensation account – about $2,938.

{¶ 22} According to Curtis, it logically follows that the parties had already agreed that retirement benefits would be considered only for purposes of spousal support. If this was the parties' agreement, it was not adequately stated on the record. The parties advised the court that, "The items that are in dispute would be spousal support and personal property." Transcript of Proceedings, p. 3.

{¶ 23} Curtis directs our attention to *Manning v. Jusak*, 8th Dist. Cuyahoga No. 99459, 2013-Ohio-4194. In *Manning*, the parties excluded mention of the pension in the separation agreement, but specifically agreed in writing that spousal support was based on each party receiving an equal share of the parties' retirement benefits. The court found any error to be invited by appellant. In this regard, the court held that:

> Having induced the court to enter judgment in accordance with the
>
> terms of a separation agreement that funded spousal support with
>
> the pension plan, Manning cannot be heard to complain that the
>
> court did not divide that pension as marital property. *Id.* at ¶ 10.

{¶ 24} In contrast, here the parties failed to specifically and fully articulate their intentions, as was found in *Manning*. Due to the lack of specificity, we decline to infer that Cinda intentionally waived her rights to property division of Curtis's pension.

{¶ 25} In view of the parties' failure to specifically raise the pension issue with the trial court, we could conclude that Cinda unwittingly waived the property division issue. However, we are troubled by several points, and under the circumstances, we believe that these rise to the level that should be recognized under the plain error doctrine. *See, e.g.*, *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997).

{¶ 26} First of all, the trial court abused its discretion when it awarded Cinda only $450 per month for six years, meaning that her share of the pension will end when she is only 57 years old – 10 years before she would be eligible to collect full social security, and, presumably, seven years before she would be able to apply for other retirement benefits, if any.

{¶ 27} In the case before us, the record does not contain information about the value, if any, of Cinda's retirement account with the State of Ohio. In addition, the figures provided for Curtis's retirement account are only current through August 29, 2011 – more than one year prior to the time that Curtis retired. Additional contributions would have been made after that date. There was no evidence as to what Curtis's monthly benefit was under "plan A." The lack of current figures and proper documentation provide an insufficient basis for a reasoned decision on spousal support or division of the respective pensions.

{¶ 28} One method of calculating an equitable division is to use a coverture fraction. " ' "The coverture fraction takes the total years of marriage divided by the total years of [the former spouse's] service. Under this method, [the recipient spouse] receives half of the coverture fraction multiplied by the value of the pension" at the time of retirement.' " *Long v. Long,* 176 Ohio App.3d 621, 2008-Ohio-3006, 893 N.E.2d 217, ¶ 60, fn. 6 (2d Dist.), *quoting Benfield v. Benfield*, 2d Dist. Montgomery No. 19363, 2003-Ohio-5968, ¶ 7, fn.1. (Other citation omitted.)

{¶ 29}   For purposes of illustration only, and using the outdated figures provided for Curtis's retirement account, the value as of August 2011 was $221,777. The total years of marriage (approximately 25) x Curtis's years of service (30), results in a coverture fraction of about .833. One half of this fraction is .416. $221,777 x .416 = 92,259.23 – which is the amount that Cinda should have received from Curtis's retirement account. At the rate of spousal support assessed by the court ($450 per month), the duration of the spousal support award to fund this amount would have been more than 17 years. Conversely, the amount of potential spousal support required to fund this amount, based on the six-year term selected by the court, would have been about $1,281 per month. The figures we suggest may not be appropriate, based on the amount, if any, of Cinda's retirement funds. If the trial court intended to account for the equitable division of property by awarding spousal support, the award was not reasonable, based on the facts in the record.

{¶ 30}   "Trial courts have broad discretion regarding spousal support orders. Accordingly, an appellate court ordinarily will not disturb those orders absent an abuse of discretion." (Citation omitted.) *Papp v. Papp*, 2d Dist. Montgomery No. 25333, 2013-Ohio-506, ¶ 15. "A trial court abuses its discretion when the court's attitude was unreasonable, arbitrary, or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 31}   The same standards apply to property division. *See, e.g.*, *Berish v. Berish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982), citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981). Under the circumstances, we must conclude that the trial court abused

its discretion in awarding spousal support and in failing to account for both pensions.

**{¶ 32}** Cinda's First and Second Assignments of Error are sustained. This case will be reversed and remanded so that the trial court may fully consider the pension rights of the parties and make its decision based on proper documentation and evidence.

**{¶ 33}** Accordingly, the First and Second Assignments of Error are sustained.

### III. Did the Trial Court Err in Failing to Impute Income to Curtis?

**{¶ 34}** Cinda's Third Assignment of Error states as follows:

> The Trial Court Should Have Imputed Income to Mr. Alexander, as He was Voluntarily Unemployed.

**{¶ 35}** Under this assignment of error, Cinda contends that the trial court should have imputed income to Curtis because he was voluntarily unemployed or was under-employed. Curtis did not respond to this assignment of error.

**{¶ 36}** In support of her position, Cinda relies on *Meyer v. Meyer*, 6th Dist. Lucas No. L-04-1359, 2005-Ohio-6249, in which the trial court based its spousal support award on a husband's pre-retirement income. *Id.* at ¶ 5. The trial court concluded that the husband had retired early in order to avoid paying spousal support. *Id.*

**{¶ 37}** "Ohio courts have determined that earning ability involves 'both the amount of money one is capable of earning by his or her qualifications, as well as his or her ability to obtain such employment.' " *Seaburn v. Seaburn*, 5th Dist. Stark No. 2004CA00343, 2005-Ohio-4722, ¶ 32, quoting *Haniger v. Haniger*, 8 Ohio App.3d 286, 288, 456 N.E.2d 1228 (10th Dist. 1982). "When considering the relative earning abilities of the parties in connection with an award of

spousal support, Ohio courts do not restrict their inquiry to the amount of money actually earned, but may also hold a person accountable for the amount of money a 'person could have earned if he made the effort.' " *Id.*, quoting *Beekman v. Beekman*, 10th Dist. Franklin No. 90AP-780, *6, 1991 WL 160062 (August 15, 1991).

{¶ 38} Further, "[b]ecause R.C. 3105.18(C) permits inquiry into a party's earning potential, Ohio courts often impute income to parties who are voluntarily underemployed or otherwise not working up to their full earning potential."   (Citations omitted.)   *Id.* at ¶ 33.

{¶ 39} The evidence in *Meyer* indicated that the husband had voluntarily retired from a job that paid about $90,000 per year in order to avoid paying spousal support.  *Meyer*, 6th Dist. Lucas No. L-04-1359, 2005-Ohio-6249, at ¶ 5.   The trial court did not believe the husband's claim that he had retired because of his health.   Among other evidence, the wife presented evidence that, post-retirement, the husband continued to perform manual labor at his brother-in-law's business and also did physical volunteer work at his yacht club.   *Id*. at ¶ 4.

{¶ 40} Cinda failed to challenge her husband's reasons for retiring, and also failed to present evidence similar to what was presented in *Meyer*.   The trial court cannot be faulted for failing to consider evidence that was not submitted.

{¶ 41} Accordingly, the Third Assignment of Error is overruled.

## IV.  Conclusion

{¶ 42} Cinda's First and Second Assignments of Error having been sustained, and her Third Assignment of Error having been overruled, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.

Copies mailed to:

Rebekah S. Neuherz
Jeffrey D. Slyman
Hon. Timothy D. Wood