OPINION
{¶ 1} Mohammad Rihan appeals from a judgment entry and final decree of divorce issued by the Greene County Common Pleas Court, Domestic Relations Division. In its judgment entry, the trial court terminated Mohammad's marriage to plaintiff-appellee Katia Rihan and resolved issues such as child custody and visitation, spousal support and child support, and the division of marital assets.
 {¶ 2} Mohammad advances three assignments of error on appeal. First, he contends the trial court erred in determining his business income for purposes of its spousal support and child support computation. Second, he claims the trial court erred in finding that he engaged in misconduct with regard to the marital residence. Third, he argues that the trial court erred by adopting an excessive hourly rate when awarding attorney's fees.
 {¶ 3} For the reasons set forth below, we conclude that the record does not support the trial court's factual findings regarding Mohammad's business income. We find no merit, however, in his claim that the trial court erred in finding misconduct on his part concerning the marital residence. The preponderance of the evidence supports the trial court's conclusion that Mohammad intentionally burned the home. Finally, we agree that the trial court adopted an excessive rate of $300 per hour when calculating Katia's attorney's fees. Accordingly, we will sustain Mohammad's first and third assignments of error and remand this cause for further proceedings.
 I. Background {¶ 4} Mohammad and Katia were married on September 14, 1994, in Amman, Jordan. Three children were born during the marriage. Katia filed her complaint for divorce on May 21, 2002. After extensive discovery and motion practice, the action proceeded to trial on August 5-7, 2003, and January 12-13, 2004. Based on the testimony and documentary evidence presented, the trial court filed its judgment entry and final decree of divorce with findings of fact and conclusions of law on April 28, 2004.
 {¶ 5} In relevant part, the trial court designated Katia the sole residential parent and obligated Mohammad to pay spousal support and child support. For purposes of its support awards, the trial court determined that Mohammad, who is self-employed in the cellular phone and calling card business, had a net business income of $120,000 on phone card sales of $240,000. With regard to its division of the parties' property, the trial court found that Mohammad intentionally had burned the marital residence during the pendency of the divorce action. As a result, the trial court awarded Katia additional marital assets to offset her loss of one-half of the value of the destroyed home. Finally, when addressing Katia's entitlement to attorney's fees, the trial court concluded that the complex nature of the case, resulting in large part from Mohammad's actions, justified her counsel's fee rate of $300 per hour.
 II. Analysis {¶ 6} In his first assignment of error, Mohammad contends the trial court erred in determining his income for purposes of its spousal support and child support computation. Mohammad contends the record does not support the trial court's factual finding that he has a net income of $120,000 per year from the sale of phone cards.
 {¶ 7} In its April 28, 2004, judgment entry, the trial court addressed the issue of Mohammad's income as follows:
 {¶ 8} "The Defendant has failed to produce adequate income documentation. From the testimony and evidence presented, the Court finds his potential income to be one hundred twenty [thousand] dollars ($120,000) per year. The income is derived from his various cell phone and pager enterprises. The Defendant also has rental income from an apartment building located in Jordan that he has an interest in.
 {¶ 9} "The Defendant testified that he did two hundred forty thousand dollars ($240,000) in cash transactions on phone cards alone. It is determined that 50% of the monies earned have been used to pay ordinary and necessary expenses incurred by the Defendant in generating his gross receipts. This leaves one hundred twenty thousand ($120,000) per year in self generated income for the Defendant's use."
 {¶ 10} On appeal, Mohammad argues that his trial testimony reveals he sold $220,000 worth of phone cards with a profit margin of just two percent, or $4,400. As a result, he contends the trial court erred in relying on his testimony to find that his net income from his phone card business was $120,000. In response, Katia fails to address Mohammad's claim that the trial court misstated his income from phone card sales. Instead, she insists that other testimony in the record, if believed, supports a conclusion that Mohammad had substantial income from various other sources.
 {¶ 11} Upon review, we agree with Mohammad's argument that the record fails to support the trial court's factual findings regarding his phone card sales. Although the trial testimony regarding phone card sales was not entirely clear, Mohammad testified at one point that his mark-up on the cards was fifteen percent. (Tr. Vol. III at 47). He then said that his phone card sales were more than $100,000 per year, although he did not put a time frame on the sales. (Id. at 48). Mohammad added that he "used to" sell "wholesale phone cards" with a mark-up of twenty-two percent on sales of $400,000 to $470,000. (Id. at 48-49). Later in the trial, the following exchange occurred between Mohammad and Katia's counsel:
 {¶ 12} Counsel: "I remember you testified on cross-examination at your trial here that you did $220,000 in —"
 {¶ 13} Mohammad: "Phone cards?"
 {¶ 14} Counsel: "Yes, sir."
 {¶ 15} Mohammad: "At one point, yes, we used to be a wholesale for two percent."
 {¶ 16} Counsel: "So this little paycheck that you're getting is hardly your income, is it?"
 {¶ 17} Mohammad: "If you remember, I was telling you I was a wholesaler for phone cards. Just actually a money exchange. It was no money." (Tr. Vol. 5 at 150).
 {¶ 18} Although Mohammad's testimony regarding phone card sales is at times seemingly contradictory, none of it supports the trial court's determination that he had net income of $120,000 on phone card sales of $240,000. In fact, neither the trial court nor Katia cites any testimony to support this factual finding.
 {¶ 19} As for Katia's contention that certain other evidence in the record, if believed, would support a finding of substantial business income on Mohammad's part, we note that the trial court did not rely on it when computing his income for purposes of spousal support and child support. We note too that some of the sources of income cited by Katia were expressly rejected by the trial court. For example, Katia argues that Mohammad had ten stores in the Dayton area and that he made money selling cars to people in the Middle East. In its judgment entry, however, the trial court found that Katia had failed to prove Mohammad's ownership of most of the businesses. It also found that Katia had failed to prove any profit by Mohammad on the automobile-selling venture.
 {¶ 20} Because the record fails to support the trial court's factual finding that Mohammad clears $120,000 from the sale of phone cards, and given that the trial court relied on this incorrect finding when setting his spousal support and child support obligation, we will sustain the first assignment of error and remand the cause to the trial court for a redetermination of Mohammad's income.
 {¶ 21} In his second assignment of error, Mohammad contends the trial court erred in finding that he engaged in misconduct with regard to the marital residence. This argument concerns the trial court's determination that he intentionally destroyed the house by fire.
 {¶ 22} In its April 28, 2004, judgment entry, the trial court stated as follows:
 {¶ 23} "The Plaintiff was able to show by the preponderance of the evidence the Defendant destroyed the house by fire. Plaintiff's exhibit 33 is an incident report of the arson that took place on August 17, 2003. Detective Mark Brown of the Beavercreek Police Department testified that turpentine was found on rags stuffed in the bathtub drain and the toilets. Other inconsistent statements were made to the police by the Defendant. The Defendant was at home but did nothing to put out the fire. He claimed he was stabbed and assaulted by the Plaintiff, but there were no wounds on his body.
 {¶ 24} "The report stated the arson took place in regards to the domestic violence action. After the fire, the Beavercreek Police Department were concerned [sic] for the Plaintiff's safety and tried to contact her at her home in the Canton, Ohio, area but later found her in Hoboken, New Jersey.
 {¶ 25} "She was staying with a friend in New Jersey at the time the incident occurred. Finally, the fire was determined to be arson.
 {¶ 26} "The house had a stipulated value of $250,000. Defendant admitted he did not renew the property insurance and the marital residence is a total loss. The only discernable value of the residence is the land the home was built on.
 {¶ 27} "The land itself is valued by Greene County at thirty-four thousand seven hundred eighty dollars ($34,780) but there is also the expense of clearing the home's charred remains. Testimony set the cost of clearing the ruins at twenty thousand dollars ($20,000). After deducting this amount, it is determined that the remaining value of the residence is fourteen thousand seven hundred eighty dollars ($14,780). Each party is AWARDED one half of the residence's value or seven thousand three hundred ninety dollars each ($7,390). However, the Defendant's one-half award is offset against the equity the Plaintiff would have received had the Defendant not destroyed the house.
 {¶ 28} "The Plaintiff would have been awarded one hundred twenty-five thousand dollars ($125,000) but because of the Defendant's financial misconduct, her portion of the equity was reduced by one hundred seventeen thousand six hundred ten dollars ($117,610)."
 {¶ 29} On appeal, Mohammad takes issue with several aspects of the foregoing findings. He first disputes the trial court's statement that detective Mark Brown found turpentine on rags stuffed in the bathtub drain and the toilets. Mohammad contends the detective only testified about wanting to question him concerning turpentine being found in the bathtub drains. Upon review, we agree that the detective did not mention any rags in his trial testimony. However, he did mention finding turpentine in the bathtub drains and concluded that the fire resulted from arson. His failure to mention rags in connection with the turpentine does not undermine his finding of arson, particularly in light of the other evidence discussed herein.
 {¶ 30} Mohammad next claims the trial court erred in finding that he made inconsistent statements to the police. Mohammad is correct. Detective Brown actually testified that Mohammad's statements to police were inconsistent with statements he made to his neighbors at the time of the fire. According to detective Brown, Mohammad told his neighbors that at the time of the fire he had been stabbed and tied up by his wife and two men. Mohammad later told police that two men had accosted him and apparently did not mention being stabbed by his wife. In our view, the trial court's error in finding that Mohammad told inconsistent statements to two different police officers, as opposed to a police officer and neighbors, is of little consequence. The fact remains that Mohammad told inconsistent statements about the circumstances surrounding the fire.
 {¶ 31} Mohammad also argues that detective Brown's testimony about the statements he made to his neighbors was inadmissible hearsay. Although Mohammad asserts that his attorney objected to the testimony, the record reflects that he did not. In his appellate brief, Mohammad cites an objection to testimony concerning a previous allegation of felonious assault. (Tr. Vol. 5 at 5). Defense counsel did not object when detective Brown testified about the statements Mohammad had made to his neighbors. (Id. at 7-8). Given Mohammad's failure to raise a hearsay objection in the trial court, he has waived his ability to challenge the testimony on appeal. Nichols v. Kastner (Feb. 12, 1987), Montgomery App. No. 9783.
 {¶ 32} Mohammad next stresses that no criminal charges have been filed against him as a result of the fire. This fact, however, did not preclude the trial court from finding, by the preponderance of the evidence, that Mohammad burned the home. We note too that on the advice of counsel Mohammad has refused to speak to arson investigators. At trial, his attorney also instructed him not to answer any questions about the investigation. (Tr. Vol. V at 8, 145-146). In a civil case, an adverse inference may be drawn from such silence. State ex rel. Verhovec v.Mascio, 81 Ohio St.3d 334, 337, 1998-Ohio-431, quoting Baxter v.Palmigiano (1976), 425 U.S. 308, 318 ("`[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them[.]'"); National Acceptance Co. of America v. Bathalter (6th Cir. 1991), 1991 WL 263474, quoting National Acceptance Co. of America v.Bathalter (7th Cir. 1983) 705 F.2d 924, 929 ("`[T]here is no longer any doubt that at trial a civil defendant's silence may be used against him, even if that silence is an exercise of his constitutional privilege against self-incrimination.'").
 {¶ 33} Mohammad also takes issue with the trial court's finding that he "admitted he did not renew the property insurance." Mohammad contends he actually testified that he was unaware insurance did not exist. We find this argument unpersuasive. Whether Mohammad admitted not renewing the property insurance is immaterial. It is undisputed that the insurance in fact was not renewed. In addition, the trial court found that Mohammad intentionally burned the home and awarded Katia other assets to offset her loss of one-half the value of the home. As we will explain below, the trial court's decision to do so was within its discretion. This is true regardless of whether Mohammad admitted not renewing the insurance before destroying the home. In any event, the trial court correctly found from Mohammad's testimony that he did admit failing to renew the property insurance. He expressly stated that the insurance bill "was one of the bills that was not paid." (Tr. Vol. V at 154).
 {¶ 34} Having reviewed the entire record, we conclude that the trial court's finding of arson on the part of Mohammad is supported by the preponderance of the evidence. The record reflects that he was present at the scene of the fire, whereas Katia was in Hoboken, New Jersey. (Tr. Vol. 5 at 6; 160-162). At the time of the fire, Mohammad went to his neighbors' house and asked them to call 911. (Id. at 8). He also advised them that he had been stabbed and taped up by Katia (who was in New Jersey) and two other men. (Id.). Mohammad subsequently refused to speak to fire investigators, who found turpentine in the drains and concluded that the fire was the result of arson. (Id.). At trial, defense counsel also instructed Mohammad not to answer any questions about the ongoing criminal investigation of the fire. (Id. at 145). As noted above, this silence supports a legitimate adverse inference regarding his involvement in the fire, as do his presence at the scene and his apparently false comments to his neighbors. Based on the preponderance-of-the-evidence standard applicable in civil litigation, we find no error in the trial court's determination that Mohammad was responsible for the burning of his home.
 {¶ 35} In an alternative argument, Mohammad contends the trial court erred by considering his burning of the marital home "when determining the amount of appropriate spousal support." We note, however, that the trial court actually took the arson into account when it divided the marital assets. The trial court awarded Katia additional assets to compensate her for Mohammad's destruction of her onehalf interest in the home. In so doing, the trial court acted well within its discretion. See R.C. § 3105.171(E)(3) ("If a spouse has engaged in financial misconduct, including, but not limited to, the * * * destruction * * * of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."). When setting spousal support, the trial court merely mentioned that Katia's one-half interest in the marital home had been her only tangible asset. This is a true statement, and it is relevant to the issue of Katia's need. Accordingly, we overrule Mohammad's second assignment of error.
 {¶ 36} In his third assignment of error, Mohammad claims the trial court erred by adopting an excessive hourly rate when awarding attorney's fees. The record reflects that the trial court awarded Katia attorney's fees based on 153.25 hours of attorney work at a rate of $300 per hour and 167 hours of paralegal work at a rate of $100 per hour. On appeal, Mohammad does not dispute the hours or the rate for the paralegal work. Nor does he dispute the hours for the attorney work. His only argument is that a rate of $300 per hour for attorney work is excessive in a Greene County divorce case.
 {¶ 37} The amount of an attorney's fee award is within a trial court's discretion. Bittner v. Tri-County Toyota, Inc. (1991), 58 Ohio St.3d 143,146. Important considerations when a trial court computes an award of attorney's fees include the time and labor involved and the fee customarily charged in the locality. Leffel v. Leffel (June 15, 2001), Clark App. No. 2000 CA 78. In support of its award, the trial court essentially found that Mohammad had engaged in conduct that resulted in extensive discovery and pretrial motion practice, thereby causing Katia to incur more attorney's fees than normal. The trial court also cited the complexity of the legal issues involved in the case and the need for counsel to research bankruptcy and international law.
 {¶ 38} Mohammad argues, however, that the foregoing facts already were reflected in the 153.25 hours of work performed by Katia's attorneys. In other words, Mohammad contends that insofar as his actions and the nature of the case required Katia's attorneys to perform more work, they simply billed more hours. He contends the record contains no evidence to suggest that her attorneys possessed some extraordinary expertise that would justify also increasing the hourly rate beyond what is customary in a Greene County divorce case.
 {¶ 39} Upon review, we find Mohammad's argument to be persuasive. Katia's own expert witness, attorney Paul Barrett, testified that he had nearly twenty three years of experience and practiced primarily in the area of domestic relations law. (Tr. Vol. II at 4). Barrett also testified that his own rate is $185 per hour. (Id. at 10). He admitted that a rate of $300 per hour is higher than customary in Greene County domestic relations cases. (Id. at 6, 9). He stated that the usual rate in a Greene County domestic relations case is $185 to $200 per hour. He justified the $300 per hour rate sought by Katia's attorneys, however, based on the "nature of the case" and the "expertise" required. (Id.).
 {¶ 40} Our review of the record fails to reveal that Katia's counsel possessed any special expertise that would justify a higher than customary hourly rate for her attorney's fees. Although the present case may have been more complex than a typical divorce action, that fact is reflected in the number of hours Katia's attorneys spent working on it. Absent evidence that Katia's counsel possessed some special expertise that justified a higher than ordinary hourly rate, we conclude that the trial court abused its discretion in using a rate of $300 per hour to calculate her attorney's fees.
 {¶ 41} In opposition to the foregoing conclusion, Katia has suggested that her counsel is entitled to a higher hourly rate than is customarily charged in Greene County domestic relations cases because her attorneys were from Dayton, where higher rates prevail. We find this argument to be unpersuasive. Katia's expert was a Greene County domestic relations attorney, and her lawsuit was filed in the Greene County Common Pleas Court, Domestic Relations Division. "A client cannot choose the most expensive firm in a different locality and expect to recover full fees from their opponent in another locality just because they have proof that they paid the bill." B-Right Trucking Co. v. Interstate PlazaConsulting, 154 Ohio App.3d 545, 567, 2003-Ohio-5156. Based upon the expert testimony presented by Katia and our review of the record, we conclude that a rate of $300 per hour for attorney's fees is excessive in this case. Accordingly, we will sustain Mohammad's third assignment of error and remand the cause for the trial court to recalculate Katia's attorney's fees consistent with the analysis set forth above.
 III. Conclusion {¶ 42} Having sustained Mohammad's first and third assignments of error, we hereby affirm in part and reverse in part the judgment of the Greene County Common Pleas Court, Domestic Relations Division, and remand this cause for further proceedings consistent with this opinion.
Fain, J., concurs.