[Cite as *Henderson v. Henderson*, 2021-Ohio-3117.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| MARY BETH HENDERSON | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case Nos. 2020-CA-40 & |
| | : | 2021-CA-5 |
| v. | : | |
| | : | Trial Court Case No. 2017-DR-189 |
| GRAEME HENDERSON | : | |
| | : | (Domestic Relations Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of September, 2021.

. . . . . . . . . . .

MICHAEL P. MCNAMEE, Atty. Reg. No. 0043861 & ALEXANDER W. CLOONAN, Atty. Reg. No. 0095690, 2625 Commons Boulevard, Beavercreek, Ohio 45431
       Attorneys for Plaintiff-Appellee

MARK D. WEBB, Atty. Reg. No. 0085089, 140 North Main Street, Suite B, Springboro, Ohio 45066
       Attorney for Defendant-Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Graeme Henderson ("Husband") appeals the judgment of the Greene County Court of Common Pleas, Domestic Relations Division, overruling in part and sustaining in part objections to the magistrate's decision and entering a judgment and decree of divorce. Specifically, he challenges the court's orders regarding spousal support to be paid to Plaintiff-Appellee Mary Beth Henderson ("Wife") and attorney's fees. For the reasons that follow, the trial court's judgment will be affirmed.

## I.      Facts and Procedural History

{¶ 2} Husband and Wife were married on June 18, 2004. At that time, Husband was an officer in the Air Force and Wife worked as a project manager for a financial printing company. Both parties were in their late-thirties when they married. Husband had custody of two small children from a previous relationship; Wife had no children at the time. No children were born as a result of the relationship between the parties.

{¶ 3} The couple originally lived in Virginia, but shortly after getting married, they moved to Arizona when Husband was transferred to Davis-Monthan Air Force Base near Tucson. Within months of getting married and moving across the country, Husband was deployed to Iraq and Wife became fully responsible for the children. Even after Husband's return from the Middle East, Wife's primary responsibility was as a homemaker. She occasionally worked as a substitute teacher, but her main job was taking care of the children, allowing Husband to focus on advancing his military career and his hobby – triathlons.

{¶ 4} After a few years in Arizona, Husband was transferred to Wright-Patterson Air Force Base and the family made their home in Beavercreek, Ohio. During their time

at WPAFB, which lasted from 2006-2010, Wife worked part time at Alpha Veterinary Clinic in Beavercreek, but her primary responsibilities were as a mom, running the kids to school functions and practices.

{¶ 5} After his time at Wright-Patt, Husband was transferred to Hanscom Air Force Base in Boston. Shortly after the family moved from Beavercreek to the East Coast, however, Husband was deployed to Afghanistan. Because the family had just arrived in Boston when Husband was sent abroad, Wife and the children found it difficult without a strong support system; accordingly, they moved back to Beavercreek where they still owned a home. Once Husband's tour of duty ended, he was able to arrange to be stationed again at Wright-Patt. Wife, once again, was employed on a part-time basis by Alpha Veterinary Clinic.

{¶ 6} In 2011, after a trip to the emergency room to treat an injured nose, Wife was preliminarily diagnosed with Fahr's Disease, a genetic neurogenerative disease that leads to neuropsychiatric symptoms and movement disorder. A trip to the Cleveland Clinic confirmed the diagnosis.

{¶ 7} In 2014, after this second stint at Wright-Patt, Husband retired from the Air Force and the family moved back to Virginia, where the couple began having marital problems. Wife left the marital home in October 2016. She testified that she wanted to stay in Virginia but could not afford to. Instead, Wife relocated back to Beavercreek (with the help of husband) because she knew that she could return to her job at Alpha Veterinary Clinic. Husband remained at the marital residence with his children. He also began paying Wife a sum of money between $2,000 and $3,000 each month.

{¶ 8} Wife filed a complaint for divorce with the Greene County Court of Common

Pleas, Domestic Relations Division, on July 10, 2017. An amended complaint was filed on July 21, 2017, and Husband filed an answer and counterclaim on August 4, 2017. Temporary orders were addressed by the magistrate on August 25, 2017 and required Husband to pay temporary spousal support beginning September 1, 2017.

{¶ 9} After numerous delays, the matter came before the magistrate for hearings on February 22, May 14, and May 16, 2019. Nine witnesses, including the parties, medical professionals, occupational rehabilitation specialists, and tax and real estate experts took the stand over the three days of testimony. On January 6, 2020, the magistrate issued her Decision and Final Decree, to which Husband objected. On July 2, 2020, the trial court issued an entry overruling in part and sustaining in part the magistrate's decision and entered a final judgment and decree of divorce. Of note to this appeal, the court ordered that Husband pay $2,300 per month in spousal support for 48 months, and it retained jurisdiction of the matter for 96 months – four years after spousal support was scheduled to end. The court also ordered Husband pay $7,500 of Wife's attorney's fees.

{¶ 10} Husband appeals from the trial court's judgment, raising two assignments of error.

## II.  Spousal Support

{¶ 11} In his first assignment of error, Husband asserts that the trial court abused its discretion by ordering spousal support for four years, retaining jurisdiction for an additional four years, and failing to credit him for 38 months of payments he made prior to the effective date of spousal support.

{¶ 12} A trial court enjoys a great deal of latitude in awarding spousal support, including the amount thereof, and its determinations are only reversible for an abuse of

discretion. *Hittle v. Hittle*, 181 Ohio App.3d 703, 2009-Ohio-1286, 910 N.E.2d 1042, ¶ 9. Abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "The mere fact that a reviewing court would have reached a different result is not enough, without more, to find error." *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 67.

{¶ 13} While the court has broad discretion, it is not unlimited, and R.C. 3105.18(C)(1)(a)-(n) set forth 14 factors it must consider, including: (a) the income of the parties; (b) the relative earning abilities of the parties; (c) the ages and physical, mental, and emotional conditions of the parties; (d) the retirement benefits of the parties; (e) the duration of the marriage; (f) the extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) the standard of living of the parties established during the marriage; (h) the relative extent of education of the parties; (i) the relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) the contribution of each party to the education, training, or earning ability of the other party; (k) the time and expense necessary for the spouse who is seeking support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided it is actually sought; (l) the tax consequences; (m) the lost income production capacity of either party that resulted from that party's marital responsibilities; and (n) any other factor that the court finds to be relevant and equitable.

{¶ 14} The trial court is not required to comment or make findings on each factor, but it must consider all of them. *Long v. Long*, 176 Ohio App.3d 621, 2008-Ohio-3006,

893 N.E.2d 217, ¶ 28 (2d Dist.), citing *Kreilick v. Kreilick*, 161 Ohio App.3d 682, 2005-Ohio-3041, 831 N.E.2d 1046, ¶ 24 (6th Dist.). Absent evidence to the contrary, it is presumed that the court considered each factor. *Casper v. Casper*, 12th Dist. Warren Nos. CA2012-12-128, CA20212-12-129, 2012-Ohio-4329, ¶ 42.

{¶ 15} It appears that one of Husband's main objections to the duration of spousal support order is that it was greater (longer) than what has typically been awarded in similar cases. Eleven years of support for a twelve-year marriage was inappropriate, he claims. To reinforce his position, Husband cites several cases out of this District, including *Cox v. Cox*, 2d Dist. Montgomery Nos. 18345, 18350, 2000 WL 1838266 (Dec. 15, 2000) (four years of spousal support after a ten-year marriage was not unreasonable); *Yeazell v. Yeazell*, 2d Dist. Clark No. 2000-CA-7, 2000 WL 1064728 (Aug. 4, 2000) (seven years of spousal support after a 13-year marriage was not unreasonable); and *Howell v. Howell*, 2d Dist. Clark No. 2002-CA-60, 2003-Ohio-4842 (12 years of spousal support after a 20 year marriage was not unreasonable).

{¶ 16} There is one big problem with Husband's argument that the length of support was too long: the *actual* spousal support order was for four years, not eleven years as posited by Husband. He evidently arrives at the eleven-year total by adding the four years of ordered support with the additional four years of *jurisdiction* retained by the trial court and the *voluntary* payments he made before spousal support was ordered. By counting the *actual* spousal support order of four years, the trial court's order was shorter in length than the cases Husband cites. We conclude that the trial court did not abuse its discretion as to the ordered length of spousal support.

{¶ 17} Husband also objects to the additional four years of jurisdiction retained by

the trial court, arguing that the "trial court has placed a hypothetical future obligation if something may happen in the future." (Emphasis sic.) Appellant's brief at 13.

{¶ 18} Throughout the record below and in his briefs to this Court, Husband has downplayed the impact of Fahr's Disease on Wife's health and her future, pointing to her continued ability to work full time and teach spin class twice per week as reasons he should not have to pay spousal support past the court-ordered four years. The testimony from trial belies his skepticism.

{¶ 19} At trial, Wife presented several witnesses to testify about the effect of her Fahr's Disease diagnosis. Dr. Glen Nagasawa, Wife's neurologist at Miami Valley Hospital, testified that Fahr's Disease is a degenerative neurologic disease that causes calcification of part of the brain (basil ganglia) and leads to neuropsychiatric symptoms and movement disorder. He stated that the disease impacts balance, short-term memory, and causes vision problems and depression. "[The] [u]ltimate prognosis" Dr. Nagasawa testified, "is disability or incapacitation. * * * You have significant difficulties with movement disorder, making it very difficult for her to move effectively." Trial Tr. at 100. "Ultimately I think she'll become completely disabled." *Id.* at 104.

{¶ 20} Dr. Kenneth Manges, a clinical psychologist and vocational specialist, testified about Wife's Fahr's Disease diagnosis and the impact on her present and future employment prospects. After a lengthy interview with Wife, Dr. Manges testified that she experienced multiple difficulties due to the disease, including intermittent visual difficulty in the form of transient blindness, difficulty with stability and clumsiness, and memory issues that manifest in the form of an inability to follow procedural steps. He also stated that she was distracted easily (during the interview she would often stare out the window)

and spoke disparagingly about herself, evidencing a low self-esteem. Dr. Manges also mentioned that Wife suffered from dyspraxia, which manifests in difficulty expressing herself or finding the right words.

{¶ 21} Testimony was elicited from Dr. Manges that the symptoms of Fahr's Disease have already impacted Wife's work. He recounted that Wife had been functioning as a veterinary technician at Alpha Veterinary Clinic, a position that interacted with the animals in a medical setting, administering medications, and assisting during procedures. He testified that she could no longer function in that role due to her memory issues and inability to follow procedures and was subsequently demoted to veterinary assistant, a secretarial position. Dr. Manges also noted that he did not believe Wife could find sustainable employment anyplace other than her current job due to her conditions and limitations.

{¶ 22} Wife also testified about her inability to remember and follow basic instructions, even when written down. She recounted a recent instance when she had been given direction to give a certain cat a dose of morphine at a specified time. Despite the written and verbal instructions, Wife gave the drug to the wrong animal.

{¶ 23} Based on the testimony from the experts (and Wife herself) that Wife's condition was serious and would continue to deteriorate over time, the trial court elected to retain jurisdiction for an additional four years beyond the termination of spousal support – a timeframe that coincides with her eligibility to receive full Social Security benefits. This decision was reasonable considering Wife's disease and future prognosis.

{¶ 24} The order was also reasonable because it was not an automatic extension of spousal support. If Wife's physical condition and employment outlook degrade over the

course of the four-year spousal support period, the court, *if petitioned*, could re-examine the situation, but Wife would have to take an affirmative step to demonstrate a change in circumstances. *See* R.C. 3105.18(E). Husband could, at that point, attempt to rebut the evidence presented, as the movant has the burden of showing that modification is warranted. R.C. 3105.18(F). At this point, though, it is all hypothetical.

{¶ 25} Finally, Husband avers that he should have been given credit, either in the monthly dollar amount of payments or duration, for the $29,600 paid to Wife before the court-ordered spousal support. Both Husband and Wife testified that Husband began giving Wife money (between $2,000 and $3,000) on a regular basis after the parties physically separated in October 2016. Husband understood the payments to be support payments in an amount close to what he thought court-ordered payments might be. "My intent," he testified, "was to pay her support payments even if there wasn't a court order in play." Trial Tr. at 249. In fact, in June 2017, Husband asked Wife to give him credit for money he already paid to her. She declined.

{¶ 26} Despite his contention to the contrary, it appears the trial court did consider the payments made by Husband (between the fall of 2016 and fall 2017) before the court ordered temporary spousal support and credited him accordingly. The trial court sustained Husband's objection to the magistrate's decision as to the duration of spousal support, effectively decreasing its duration from 96 months to 48 months. The trial court stated in that paragraph that it "finds that Husband began making payments to Wife in October 2016, until the Temporary Order was filed on August 25, 2017, at which time he continued to pay under Court Order." Entry at 3. Both the result and the acknowledgment by the trial court indicate that Husband was given credit for the prior payments.

Accordingly, we conclude that this argument lacks merit.

**{¶ 27}** Because both the duration of ordered spousal support and jurisdiction retained by the trial court was reasonable, the first assignment of error is overruled.

III. **Attorney's Fees**

**{¶ 28}** In his second assignment of error, Husband contends that the trial court abused its discretion when it awarded attorney's fees to Wife. Instead, Husband asserts that each party should be responsible for their own fees. He also blames Wife for the high costs, contending that "changes in counsel, continuances, and her request for lifetime alimony" contributed to the fees incurred. Appellant's brief at 14.

**{¶ 29}** R.C. 3105.73 permits a court to award attorney's fees in divorce actions. "[A] court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." R.C. 3105.73(A). The court may consider the marital assets and income of the parties, any award of spousal support, the conduct of the parties, and any other factor the court deems relevant and appropriate. *Id.* The decision to grant attorney's fees is left to the "sound discretion of the trial court and will not be overturned on appeal absent an abuse of that discretion." *Gore v. Gore*, 2d Dist. Greene No. 09-CA-64, 2010-Ohio-3906, ¶ 34.

**{¶ 30}** "The amount of an attorney's fee award is [also] within a trial court's discretion." *Rihan v. Rihan*, 2d Dist. Greene No. 2004-CA-46, 2005-Ohio-309, ¶ 37. We have stated that important considerations when a trial court determines an award of attorney's fees include the time and labor of the matter as well as the fee commonly charged in the locality. *Id.*

Fees awarded in Final Judgment and Decree of Divorce

{¶ 31} At the May 14, 2019 trial, Wife presented evidence that she had incurred $15,234.28 in attorney's fees and litigation expenses. The court also heard from attorney David Peterson, who testified as Wife's attorney fees expert. He asserted that $275 an hour was a reasonable rate and the $175 an hour fee charged in this case was certainly appropriate. He also testified that this case had a high level of complexity due to the length of the process, experts retained, depositions taken, and motions filed. Attorney Peterson further commented that, despite being the last in a long line of attorneys, Wife's current counsel had done most of the work. Husband did not present his own expert to rebut the testimony of Attorney Peterson.

{¶ 32} The magistrate ordered Husband to pay $7,500 of the total fee of $15,234.28, finding that the award was equitable due to the high levels of animosity and complexity in the case. She also took into account Attorney Peterson's testimony regarding the reasonableness of the fees and considerable amount of work required in the case. Nevertheless, Husband objected to the magistrate's decision. His objection, however, was overruled by the trial court, which found that the award was equitable and noted that the magistrate considered the expert testimony, the complexity of the case, and that the award was less than half of the amount requested.

{¶ 33} We have previously stated that both the granting of attorney's fees and the amount of the award is within the sound discretion of the trial court. In this case, we cannot say that the court abused its discretion when it overruled Husband's objection to the magistrate's decision. This case has been in litigation for almost five years; there have been depositions taken and motions filed; experts have testified as to taxes, real estate, medical conditions and employment capabilities. It also appears that the total bill did not

account for any work done by prior attorneys. Considering all of that, ordering Husband to pay $7,500 in attorney's fees was not unreasonable.

Fees awarded on objection to magistrate's decision

{¶ 34} In March 2020, Wife filed a motion requesting attorney's fees to respond to Husband's objections to the magistrate's decision. A week later, the court ordered Husband to pay $1,000 and stated that an additional award would be "dealt with by a later order of the court." On September 8, 2020, a hearing on attorney's fees was conducted in which Attorney Douglas Houston testified on behalf of Wife. He asserted that the $7,160 fee requested by Wife was reasonable because of the complexity of the issues. Wife also testified. She stated that she did not earn enough to pay the fees incurred and that Husband earned much more than her. Husband, again, did not present a rebuttal witness.

{¶ 35} Ultimately, the trial court ordered Husband to pay $3,580 in attorney's fees, about half of what Wife requested. The court found that it was fair and equitable to award half of the fees requested, not the full amount, because some of Husband's objections were sustained.

{¶ 36} As with the court's award of attorney's fees for the work done leading up to and during the trial, we cannot say that the court abused its discretion in awarding attorney's fees for responding to Husband's objections. The court considered the required statutory factors, and its decision was not unreasonable, arbitrary, or unconscionable.

{¶ 37} Because the trial court did not abuse its discretion in awarding attorney's fees, the second assignment of error is overruled.

### IV. Conclusion

{¶ 38} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, P. J. and WELBAUM, J., concur.

Copies sent to:

Michael P. McNamee
Alexander W. Cloonan
Mark D. Webb
Hon. Steven L. Hurley